### CLEAVES v. WALSH.

OPTION CONTRACT—ALTERATION.

*C. & C. by letter asked W. & U. for an option for six months for the purchase of certain real estate. W. & U. replied by letter, giving an option for six months for the sum of $2,500. C. & C. accepted, and notified W. & U. that they were ready to take the deed. W. & U. then prepared the deed, and W. brought it from Cleveland, Ohio, to Houghton, Mich., to consummate the agreement. C. & C. asked for 10 days in which to procure the money. By arrangement the deed was left in escrow, to be delivered upon the payment of the money, and no further steps were taken until the last day provided by the original offer. *Held*, that the original offer was superseded by the subsequent agreement, and that C. & C. lost all right of purchase by their failure to comply with that agreement.

Appeal from Houghton; Streeter, J. Submitted January 10, 1901. Decided January 29, 1901.

Bill by Stephen E. Cleaves and William S. Cleaves, copartners as Cleaves & Son, against James P. Walsh and Emmet A. Upstill, copartners as Walsh & Upstill, and the Copper-Range Company, for the specific performance of a land contract. From a decree dismissing the bill, complainants appeal. Affirmed.

Complainants reside in Houghton, Mich. Defendants Walsh and Upstill reside in Cleveland, Ohio. On November 19, 1898, complainant S. E. Cleaves, on behalf of Cleaves & Son, wrote to defendants Walsh & Upstill, asking for an option for the purchase of certain real estate situated in Houghton county, known as the "Eureka Property," and that the option be made for six months. On November 23d Walsh & Upstill wrote to Cleaves &

* Head-note by GRANT, J.

Son, "If you can arrange to take it within the next six months, you can have it for an even $2,500; and this letter may be considered as an option for that length of time." The letter further proposed that they would take a down payment of five to eight hundred dollars, and approved paper or mortgage for the balance. They further stated that, if the proposition was not in the shape desired, Cleaves & Son might have a paper drawn up, such as they desired, forwarded to them, and they would execute it. Nothing further was done until February 15th following, when Cleaves & Son informed Chadbourne & Rees, who were attorneys for Walsh & Upstill, that they were ready to take the deed, requesting them to so communicate to Walsh & Upstill, and asked to have the deed made in the name of Letitia A. Cleaves, the wife of complainant William. Chadbourne & Rees, by letter dated February 15th, communicated this request to Walsh & Upstill. The deed was duly executed to Letitia as requested, and was brought to Houghton by Mr. Walsh. An interview took place between complainant William, Walsh, and Mr. Rees on February 25th. Mr. Walsh supposed that the transaction would then be closed. Mr. Cleaves asked for further time to get the money from Boston. Mr. Walsh at first objected, but finally it was agreed that the deed should be left in escrow with Chadbourne & Rees, and 10 days given complainants, or their assignee, Letitia, to produce the money and take up the deed. It was further agreed that the letter of November 23d, which contained the offer of sale, should be assigned by Cleaves & Son to Letitia A. Cleaves. This was done. Neither complainants nor their assignee tendered the money to Chadbourne & Rees, or paid any attention whatever to the matter. At the expiration of the 10 days, Chadbourne & Rees returned the deed to Walsh & Upstill. Nothing further was done until the 23d of May, the last day of the life of the option, when Mr. Cleaves notified Chadbourne & Rees that they desired and were ready to pay the $2,500. Chadbourne & Rees informed him that they had no further authority

in the matter. Mr. Cleaves then telegraphed the money to Cleveland, and a tender of the $2,500 was made. The defendant the Copper-Range Company is a subsequent purchaser, subject, however, to the rights of the complainants, inasmuch as the purchase was not made by them until after a *lis pendens* was filed. This bill is filed to enforce the specific performance of a contract claimed to exist by virtue of the acceptance by complainants of the offer contained in the letter of November 23d. A decree was rendered dismissing the bill.

*Ball & Ball*, for complainants.

*Chadbourne & Rees*, for defendants.

GRANT, J. (*after stating the facts*). The circuit court held that Cleaves & Son had accepted the offer contained in the letter, and that this acceptance made a binding contract. In this we think the court was correct. The notification by complainants to Walsh & Upstill's attorneys that they were prepared and ready to take the deed and pay therefor, and the letter written by the attorneys to Walsh & Upstill, constituted a valid contract. The contract then was that complainants should pay $2,500 upon the production of the deed. The deed was produced, properly executed, and ready for delivery upon the payment of the money. Complainants then asked for 10 days in which to procure the money. This was agreed to, and the deed left in escrow, to be delivered upon the payment of the money, if paid within 10 days. The court held that this arrangement put an end to the option and took the place of it, and dismissed the bill.

No authorities are cited by either party as to the effect of the new arrangement made on February 25th. The learned counsel for complainants insist that it had no effect upon the original offer, and left them free to accept at any time within the six months. We are of the opinion that a new agreement was made, which superseded the previous agreement. Complainants then and there agreed

to pay $2,500 within 10 days, and Walsh & Upstill agreed to leave the deed in escrow for that length of time, to be delivered upon such payment.    While this agreement was made pursuant to the offer and its acceptance, yet it was another and independent agreement, upon the execution of which depended the rights of the parties.    Complainants failed to perform it, and the custodians of the deed returned it, as they were legally bound to do.    This ended the matter.    We think the conclusion reached by the circuit court was correct.

Decree affirmed, with costs.

The other Justices concurred.