■ WINGATE H. ROYCE, Appellant-Respondent, v. ARNOLD S. RYMKE-VITCH, Respondent-Appellant, and ROBERT W. GOODMAN et al., Respondents.— AULISI, J. Cross appeals from an order of the Supreme Court at Special Term, entered April 17, 1967, in Ulster County, which denied plaintiff Royce's motion for a temporary injunction; granted defendant Rymkevitch's motion for summary judgment on Royce's claim for specific performance; denied Rymkevitch's motion for summary judgment regarding Royce's claims for damages; and granted the motion of defendants Goodman, Hyman and Brafman for summary judgment dismissing the complaint against them. On July 26, 1965 the plaintiff Royce and the defendant Rymkevitch entered into a contract for the purchase of land in the Town of Woodstock. The contract price was $22,500 and the vendor, Rymkevitch, agreed that the consideration was for not less than 200 acres. Royce had the option of having a survey performed and Rymkevitch agreed that if it showed less than 200 acres, the purchase price would be reduced $112.50 for each acre less than 200. He also agreed that if " after 10 days' notice to the party of the first part [Rymkevitch], the party of the second part [Royce] shall be unable to secure the services of a duly licensed surveyor to survey said premises for not more than $1500.00, then the party of the first part shall pay the cost of such survey in excess of $1500.00." It was agreed that Rymkevitch would deliver title insurance to Royce. Closing was set for August 30, 1965 or such earlier date as the parties may agree upon. The closing never took place and Royce and Rymkevitch are in dispute as to the events causing this failure. Royce began a prior action against Rymkevitch for specific performance and damages on October 14, 1965, but this action was not pursued. Thereafter, there was correspondence between the attorneys for Royce and Rymkevitch, as well as alleged but denied negotiations between the principals. On June 10, 1966 Rymkevitch sold the property to the defendants Goodman, Hyman and Brafman. Royce then began the present action against Rymkevitch and Goodman for specific performance and damages for breach of contract, and to restrain waste on the premises, and against Rymkevitch for fraud. Royce moved for a temporary injunction and defendants moved for summary judgment. In our view the trial court was correct in denying Rymkevitch's motion for summary judgment on Royce's claims for damages. Summary judgment must be denied if " any party shall show facts sufficient to require a trial of any issue of fact other than an issue as to the amount or the extent of the damages." (CPLR 3212, subd. [b].) There are clearly triable issues of fact presented regarding fault for not closing title in the sale to Royce. Royce alleged that he consulted a surveyor who examined the property and wanted $2000-$2500 for the survey; that Royce so informed Rymkevitch; and that the latter soon thereafter told Royce that, regardless of the contract, he would not pay any extra survey costs. It also appears that Rymkevitch did not obtain the title insurance required of him at the closing. Without a survey, the sale price could not be determined, since the acreage of the parcel was unknown and no title insurance could be obtained. On the other hand, Rymkevitch alleges that the closing and preparations therefor did not go forward because, despite the descriptions from prior deeds which were incorporated by reference in the sales contract and indicated it concerned two noncontiguous parcels, Royce wanted to change the terms of the transaction. These are only some of the many conflicting factual statements contained in the affidavits, which also include an allegation of waiver or adjournment by Rymkevitch of the closing date and an allegation and denial of fraud by Rymkevitch in misrepresenting the property before the contract of sale was entered into. Similarly, there are disputed facts regarding the negotiations and other activities of Royce and Rymkevitch after the specified closing date. The accuracy of all of these

factual allegations and the exact time sequence of events must be determined upon a trial. Upon a trial of the factual issues some of the following may be applicable in determining the relief to be obtained. It is well known that where one party refuses to abide by the contract, and that refusal is not justified by the actions of the other party, the other party does not have a duty to continue his performance under that contract (Restatement, Contracts, §§ 266–290). An oral waiver of the time for performance under a contract for the sale of an interest in realty is good until withdrawn and the Statute of Frauds is avoided by the doctrine of equitable estoppel (1 Warren's Weed New York Real Property, Contracts, § 28.03, p. 709; *Thomson* v. *Poor*, 147 N. Y. 402). When there is an indefinite adjournment, some affirmative act has to be taken by one party before he can claim the other party is in default; that is, one party has to fix a time by which the other must perform, and he must inform the other that if he does not perform by that date, he will be considered in default (*Scudder* v. *Lehman*, 142 App. Div. 631, 634). If a vendor of realty agrees to furnish title insurance to the purchaser, he must do so; otherwise the purchaser need not take title (1 Warren's Weed New York Real Property, Contracts, § 9.05, p. 664; see *Drake* v. *Gaffney*, 183 App. Div. 577, affd. 228 N. Y. 596). However, it is our opinion that the trial court erred in granting the motion of Rymkevitch for summary judgment on Royce's claim for specific performance and the motion of Goodman, Hyman and Brafman for summary judgment on the claims against them. These determinations were apparently based on the view that no triable issue of fact existed regarding the status of the latter three defendants (hereinafter Goodman) as bona fide purchasers entitled to rely on the record title of Rymkevitch. Granting specific performance against Goodman would not necessarily require a showing that he knowingly interfered with a valid contract. It would be sufficient if he had "knowledge of facts that would lead a reasonably prudent purchaser to make inquiry" and he failed to do so (1 Warren's Weed New York Real Property, Bona Fide Purchaser, § 1.05, p. 357). He then could not claim the status of a bona fide purchaser. Clearly, there is a triable issue of fact arising from Royce's allegations that a real estate broker and a surveyor gave Goodman adequate notice of Royce's rights before Goodman purchased the property. The broker's two affidavits, assuming the second is the more accurate, still leave it unclear whether the notice given by the broker was enough so Goodman if he claimed protection as a bona fide purchaser had a duty to inquire as to Royce's rights. If there was such notice, the facts are unclear as to what inquiries were made. Therefore, summary judgment should not have been granted in favor of Goodman. Furthermore, there is no reason why, if there are triable issues of fact which could lead to an award of damages, the possibility of specific performance should be barred at this stage. Specific performance may be granted despite any rights of a subsequent vendee, if he bought with knowledge of Royce's claims (*Northern Operating Corp.* v. *Anopol*, 25 A D 2d 551; *Spuches* v. *Royal View*, 13 A D 2d 815). We find no merit to the contention that Royce has no standing to seek relief against Goodman because Royce did not appeal from the resettled order granting summary judgment to Rymkevitch regarding supecific performance. Royce appealed from the original order and a court reviewing an order may also review a resettled order if it is appealable as of right (CPLR 5517; *Rever* v. *Nelson*, 23 A D 2d 505, mot. for lv. to app. den. 15 N Y 2d 485). Order modified, so as to deny all defendants' motions for summary judgment, and, as so modified, affirmed, with $10 costs. Reynolds, Aulisi and Gabrielli, JJ., concur in memorandum decision by Aulisi, J. Herlihy, J. P., dissents and votes to affirm in a memorandum. Herlihy, J. P. (dissenting). The plaintiff had

ample opportunity to protect whatever interest he claims by the filing of a *lis pendens* and his failure to do so does not, in my opinion, justify our trying to protect his rights except as to whatever money damages he may be able to prove as the result of the alleged breach. From the date of the alleged contract on July 26, 1965 until the conveyance to the defendants-respondents on June 10, 1966 was substantially a year and while the defendants-respondents may have had some hearsay knowledge of the proposed prior sale, they were not bound by such statement, and particularly when the record title disclosed no outstanding lien. There is no reason for the intervention of equity to the contrary, the plaintiff was guilty of laches.