1211 Gilbert Ave. Holdings LLC v Berri (2025 NY Slip Op 50142(U))

[*1]

1211 Gilbert Ave. Holdings LLC v Berri

2025 NY Slip Op 50142(U)

Decided on February 6, 2025

Supreme Court, Bronx County

Hummel, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 6, 2025
Supreme Court, Bronx County

1211 Gilbert Avenue Holdings LLC, Plaintiff,

against
Alta Berri, Defendant.

Index No. 816749/2023E

For Plaintiffs: JAY S MARKOWITZ Firm Name: THE LAW OFICES OF JAY S. MARKOWITZ, P. C. Address:185 Hillside Avenue 1st Floor, Williston Park, NY 11596 Phone:718-468-0068 Service E-mail:jsmarkow@aol.com
For Defendant: JASON ROSS BERKE Firm Name: LAW OFFICES OF JASON BERKE P.C. Address:200 Broadhollow Rd Ste 207, Melville, NY 11747 Phone:(917) 593-9161 Service E-mail:jasonrossberke@gmail.com

Veronica G. Hummel, J.

The following papers were read on these motions (Seq No. 1) for dismissal submitted on January 6, 2025.
Notice of Motion — Affirmation and Exhibits Annexed NYSCEF Doc. # 6 — 15
Opposition and Notice of Cross Motion — Affirmation and Exhibits Annexed NYSCEF Doc. # 21 — 26
Affirmation in Opposition and in Reply NYSCEF Doc. # 27 — 30
Upon the foregoing papers, Defendant ALTA BERRI ("Defendant" or "Seller") moves for an order [Mot. Seq. 1], pursuant to CPLR 3211(a)(1) and (a)(7): dismissing the complaint against Plaintiff 1211 GILBERT AVENUE HOLDINGS LLC ("Plaintiff" or "Buyer"); awarding the Seller liquidated damages in the deposit amount of $35,000 with interest from September 28, 2023, together with costs and disbursements; and pursuant to CPLR 6514(b) and CPLR 6514(a), cancelling the Notice of Pendency dated October 24, 2023. The Buyer opposes the motion and cross-moves for: leave to serve the summons and complaint and Notice of Pendency upon the Seller nunc pro tunc pursuant to CPLR 2004; or in the alternative, granting a preliminary injunction enjoining the sale or encumbrance of the subject property pursuant to CPLR 6301. The Seller opposes the cross-motion.
The Buyer commenced this action seeking specific performance and damages for breach of contract stemming from a proposed cash only sale of real property located at 1211 Gilbert Place Bronx, NY 10474 ("the Premises"). The Buyer alleges in the complaint that the Seller "failed to convey the Premises to the plaintiff pursuant to the terms of the Agreement", that "at all times relevant hereto, plaintiff [the Buyer] has been ready willing and able to close", and that the Seller "has breached the Agreement by failing and refusing to convey the Premises to the plaintiff." The Buyer attaches to the complaint a copy of the parties' July 7, 2023 contract of sale ("the Contract of Sale") and a copy of a NYC Dept. of Buildings OATH/ECB violation report for the Premises.
The Seller now moves pre-answer to dismiss the complaint alleging that the Buyer refused to close after the Buyer sought multiple adjournments and then failed to appear at a mutually scheduled closing date after the issuance of a proper "Time is of the Essence Letter". The Seller argues that the Buyer breached the contract by failing to close and, in any event, the terms of the Contract of Sale prevented the Buyer from seeking the remedy of specific performance.
In support of the motion, the Seller submits, inter alia, the Contract of Sale, email correspondence between the parties' transactional attorneys, the Time is of the Essence Letter, the Buyer's objection to the Time is of the Essence Letter, a transcript of the closing held on September 28, 2023, and an affidavit of Ryan Walsh, Esq., defendant-seller's attorney in the underlying transaction.
The Contract of Sale, dated July 7, 2023, does not provide financing contingencies, fixes a purchase price of $700,000 and requires a downpayment of $35,000. Pursuant to the agreement, the Buyer agreed, among other things, to purchase the Premises with cash. The Buyer timely transferred the Deposit to the Seller.
The Contract of Sale contains the following relevant paragraphs:
Paragraph 15:
Closing shall take place at the office of The Law Firm of Walsh & Gilad, PLLC at on or about 45 days from the date herein, or upon reasonable notice (by telephone or otherwise) by Purchaser, through escrow/mail with the Title Company.
Paragraph 23(a) in relevant part:
If Purchaser defaults hereunder, in failing to close, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages.
Paragraph 23:
In the event the seller is unable to transfer the premises under the terms of the Contract of Sale than the sole obligation of the Seller shall be to return the Purchaser's down payment. Once returned this Contract shall be deemed null and void with neither party having any further rights or responsibilities to the other (emphasis supplied).
A series of emails between the parties' respective attorneys handling the real estate transaction detail the efforts thereafter to schedule a closing date. The time set for the closing by the contract, 45 days from the date of the agreement, was to expire on August 21, 2023.
During August 2023, the Seller (via Ryan Walsh, Esq. ("Walsh"), attorney for the Seller), writes to the Buyer, based "on or about date" in the Contract of Sale, that the Seller wishes to close by August 24, 2023.
On August 16, 2023, the Buyer (by his attorney Benjamin Fish, Esq. ("Fish")), responds that "my client is getting his ducks in a row. Hopefully will reach out soon to schedule". The Seller immediately responds that "We are looking to close by the 24th". The Buyer answers that it is "not likely".
On August 21, 2023, the Buyer writes "Not for this week. I will check with clients as to when they can close".
After further inquiry by the Seller, the Buyer writes "They are gearing up for closing but don't have date yet. Should have one soon" on August 24, 2023. The Seller promptly answers "what is the issue? This is an all cash transaction".
After follow-ups from the Seller, the Buyer fails to confirm a closing date in August.
At some point a closing date of September 15, 2023, was discussed. Three days before that date, on September 12, 2023, the Buyer states that "My client cannot close this week. He is requesting Sept 28. Please confirm."
The closing date proposed by the Buyer of September 28, 2023, was 83 days after the signing of the Contract of Sale and 38 days beyond the deadline set in the agreement for the closing.
The Seller (via Ryan Walsh, Esq. ("Walsh")), responds to the proposed adjournment insisting that "Ben, we need to keep the date. Please make it happen."
The next day, September 13, 2023, the Seller served a "Time is of the Essence Letter". The letter reads in relevant part:
Under the terms of the Contract of Sale the on or about closing date has passed. The parties mutually agreed upon the closing date for September 15, 2023 at 10am. Our firm was informed by you that the buyer can now on September 28, 2023 [sic] My client is ready, willing, and able to close on the property.
Under the terms of the Contract of Sale I am setting a closing date, TIME BEING OF THE ESSENCE for September 28, 2023 at 1pm at The Law Firm of Walsh & Gilad, PLLC, located at 125-10 Queens Blvd, Suite 222, Kew Gardens, NY 11415. Failure to attend the scheduled closing shall result in a material breach of the Contract of Sale and will be deemed a willful default by your client.
On September 22, 2023, the Seller (Lee Kaplan, Esq. ("Kaplan")) emails the Buyer, in relevant part "In advance of our closing scheduled for September 28th at 1:00pm, please find our final water reading."
The email chain includes two additional follow ups from the Seller which are unanswered for several days until September 26, 2023, when the Buyer responds, "please see attached." The Seller immediately answers "Ben, what is going on with your client, you told me your client could close on the 28th. We need to keep the date. Give us a call."
The Buyer answers that "my clients are not available until after the Jewish holidays" but does not address the fact that it was the Buyer that actually proposed the September 28th closing date. The Seller asks "Which Jewish Holiday specifically? Sukkot?," to which the Buyer responds "Passover."
The Court notes that Passover would not occur for another eight months, in April 2024.
The Buyer next served an letter of objection, dated September 26, 2023 ("the Objection Letter"). The Objection Letter states in relevant part:
Lastly, in ADC Orange, Inc. v Coyote Acres, Inc., 7 NY3d 484 [2006]; Woodwork Display Corp. v Plagakis, 137 AD2d 809 [1988]), the court reaffirmed, although it is possible for the seller to convert a non-time-of-the-essence contract into one making time of the essence, this must be done by giving the buyer "clear, unequivocal notice" 
 and a reasonable time to perform.
Your attempt to set a time of the essence closing date on fifteen (15) days' notice, with four (4) of those days being the weekend and three (3) of those days being the Jewish High Holidays—Rosh Hashanah & Yom Kippur — when my office, my client's office and the title company were all closed, is unreasonable and accordingly is rejected. Under no circumstances may my clients' down payment be released to Seller.
The Court takes judicial notice of the fact that in 2023 Rosh Hashanah began the evening of Friday, September 15, 2023, and ended the evening Sunday September 17, 2023. Yom Kipper began the evening of Sunday, September 24, 2023, and ended the evening of Monday, September 25, 2023. Hence, in fact, most of the cited Jewish Holidays occurred over a weekend.
The transcript of the closing held on September 28, 2024, reveals that the Buyer did not appear. The affidavit of Walsh states the Seller was ready willing and able to close at the September 28 closing held in the Buyer's absence.
In support of its cross-motion and opposition to the motion, the Buyer argues that the Time is of the Essence Letter was improper in that it failed to provide adequate notice.
The Buyer also argues that the Seller could not deliver clear title at closing and thus, was in default. In support of this contention, the Buyer submits, inter alia, an email from the title company. The email from Tamara Williams ("Williams"), closing coordinator at NY Infinity Land Services LLC states in part:
Good afternoon Lee Kaplan,
In reference to the quitclaim deed, we will require that both parties sign no considerations and creditors' rights affidavits. All returns vs Carmen Rijo must be addressed.
The email is undated, and the recipients are not listed. A follow up email dated October 3, 2023, after the failed closing of September 28, 2023, from Williams to Kaplan and Fish reads "Thank you. I will follow up."
The Motion
Where the motion to dismiss is based on documentary evidence under CPLR 3211 (a)(1), the claim will be dismissed only "if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law" (M & E 73-75, LLC v 57 Fusion LLC, 189 AD3d 1, 6 [1st Dept 2020] citing Leon v Martinez, 84 NY2d 83, 88 [1994]) "In considering the documents offered by the movant to negate the claims in the complaint, a court must adhere to the concept that the allegations in the complaint are presumed to be true, and that the pleading is entitled to all reasonable inferences. However, while the pleading is to be liberally construed, the court is not required to accept as true factual allegations that are plainly contradicted by documentary evidence" (Dixon v 105 West 75th Street LLC, 148 AD3d 623, 626 [1st Dept 2017]).
A defendant may submit extrinsic evidence on a motion sought pursuant to CPLR 3211(a)(7), including affidavits, however doing so will shift that standard from whether a [*2]plaintiff has stated a cause of action, to whether a defendant has a complete defense to the claims, as a matter of law (see Holder v Jacob, 216 NYS3d 134, 142 [1st Dept 2024]). "Dismissal may be appropriate where the defendant's evidence establishes that the plaintiff has no cause of action [i.e., that a well pleaded cognizable claim is flatly rejected by the documentary evidence]" (Basis Yield Alpha Fund [Master] v Goldman Sachs Group Inc., 115 AD3d 128 [1st Dept 2014]).
Specific Performance
Where a buyer seeks to hold a seller in breach of contract, the buyer must establish that he or she was ready willing and able to perform and close the transaction at the time is of the essence closing date (Sonnenschein v 1986-F&S of NY, Ltd., 217 AD3d 487 [1st Dept 2023], citing Donerail Corp. N.V. v 405 Park LLC, 100 AD3d 131, 138 [1st Dept 2012]). In order to set a proper "time is of the essence" date, one may be set by the parties' contract, or the seller may unilaterally provide the buyer a "clear, unequivocal notice" and a reasonable time to perform (see ADC Orange Inc v Coyote Acres Inc, 7 NY3d 484, 490 [2006] citing Zev v Merman, 134 AD2d 555 [2d Dept 1987], affd 73 NY2d 781 [1988]). The "specificity of the notice and the reasonableness of the time condition" is evaluated considering the surrounding facts and circumstances of the case (Miller v Almquist, 241 AD2d 181, 185 [1st Dept 1998]). Such factors include the previous conduct of the parties, the sophistication of either party in real estate transactions, the presence or absence of financing contingencies, the possibility of hardship or prejudice to either party, the presence or absence of bad faith, or the specific number of days provided for performance (see id at 185, citing Zev, 134 AD2d 555). Where either party defaults on a time is of the essence closing date by failing to close, the party seeking specific performance has the burden to establish he or she was "ready, willing and able" to close the contract and comply with its terms on the time is of the essence closing date (see CSN Realty Corp v 2252 Third Ave LLC, 231 AD3d 612 [1st Dept 2024]).
Here, the Seller set a proper "time of the essence" closing date, which was selected by the Buyer, by sending an unequivocal notice and a reasonable time to close. The time set to close on the all cash transaction was reasonable in light of the fact that the Buyer requested the date, the Seller's expressed clear commitment to closing in September, 2023, the Jewish holiday initially cited by the Buyer for an adjournment would delay the closing of 8 months, the other holidays thereafter referenced were largely on the weekends, the absence of a contingency clause, the parties' business sophistication, the absence of any claim of prejudice, the Buyer's prior delays, and the Buyer's failure to articulate any reasonable justification for failing to timely close on the all-cash deal or for needing the requested adjournments (see Miller, 241 AD2d 181, 185 [time to close unreasonable where the delay in closing was due to a "documentation glitch" typical in real estate transactions and buyers were not experienced in purchase of real estate]; REEC W. 11th St LLC v 246 W 11 St. Realty Corp., 162 AD3d 472, 473 [1st Dept 2018] [14 day time to close reasonable in the absence of a contingency clause and prior delays]; see also Charchan v Wilkins, 231 AD2d 668, 669 [2d Dept 1996] [12 day time to close reasonable where seller had fixed closing date themselves]; Herman v 818 Woodward LLC, 218 AD3d 756, 759 [2d Dept 2023] ["Although the determination of reasonableness is usually a question of fact, it may become a question of law, where, as here, there is no dispute as to the facts"]). Hence, the Buyer's argument that the Seller's time condition was "inherently unreasonable" due to the Jewish Holidays falling in the interim is unconvincing because the Buyer selected that September 28 closing date, many of the holidays fell on the weekend, the Buyer is a [*3]sophisticated LLC, and the Buyer had several previous unexplained delays.
Of note, it is undisputed that the emails submitted are documentary evidence for within the meaning of CPLR 3211(a)(1) (Seaman v Schulte Roth & Zabel, LLP, 176 AD3d 538, 539 [1st Dept 2019] ["Emails may be considered as documentary evidence if those papers are 'essentially undeniable"]). The Seller establishes, therefore, that the Buyer was not ready, willing, or able to perform the terms of the contract on the Time is of the Essence closing date by submitting the emails indicating the Buyer was refusing to appear at the closing (see CSN Realty Corp, 231 AD3d 612).
In opposition, the Buyer fails to establish that it was ready, willing, and able to close on that date. Even taking the allegation in the complaint as true that it was "ready willing and able to close" on September 28, 2023, the Seller's submissions proving the Buyer's inexplicable unwillingness to do so render this fact "not a fact at all" (see Dixon, 148 AD3d 623, 626). The conclusory statement in the attorney affirmation and incomplete chain of emails do not substantiate its claim that it was ready, willing and able to close. Of note, even to date, the Buyer fails to submit any proof of its financial ability to pay the $700,000 in cash that it agreed to pay (see Sonnenschein, 217 AD3d 487 ["We reject plaintiff's conclusory allegations that they were ready, willing and able to close, as they submitted no evidence of their financial ability to pay the balance of the purchase price on the time is of the essence or final closing date"]).
In addition, the Buyer's argument that its breach was caused by the Seller's alleged failure to deliver insurable title is without merit. The issue of the quality title arose after the missed closing date. Furthermore, even assuming the Seller was unable to satisfy its own contractual obligations to deliver insurable title, the Buyer is not relieved from its burden (see 3801 Review Realty LLC v Review Realty Co. LLC, 111 AD3d 509, 510 [1st Dept 2013], see also Zeitoune v Cohen, 66 AD3d 889, 891 [2d Dept 2009] ["An anticipatory breach by the party from whom specific performance is sought excuses the party seeking performance from tendering performance, but not from the requirements that the party seeking specific performance establish that he or she was ready, willing and able to perform"]). Moreover, the Buyer does not allege that the Seller's actions frustrated the Buyer's own ability to satisfy its contractual obligations on September 28, 2023 (see 3801 Review Realty LLC, 111 AD3d 509).
Finally, the Seller's argument that the parties' contract forecloses the Buyer from seeking the remedy of specific performance is unanswered in opposition and is thus conceded (see Sacino v Metropolitan Tansp. Auth., 184 AD3d 534 [1st Dept 2020]; Josephson LLC v Column Fin Inc., 94 AD3d 479 [1st Dept 2012]). Moreover, the Seller correctly argues that paragraph 23 of the first rider to the parties' contract limits the buyer's remedy to return of the deposit with the inclusion of the "sole obligation" language (see L.K. Sta. Group, LLC v Quantek Media, LLC, 62 AD3d 487, 492 [1st Dept 2009], Gindi v Intertrade Internationale Ltd., 50 AD3d 575, 576 [1st Dept 2008] ["when a contract for the sale of real property contains a clause specifically setting forth the remedies available to the buyer if the seller is unable to satisfy a stated condition, fundamental rules of contract construction and enforcement required that we limit the buyer to the remedies for which it provided in the sale contract"]; see also Grace v Nappa, 46 NY2d 560, 565 [1979] ["absent some indicia of fraud or other circumstances warranting equitable intervention, it is the duty of a court to enforce rather than reform the bargain struck"]).
Accordingly, the branch of Defendant's motion that seeks an order dismissing the cause of action seeking specific performance is granted.
Breach of Contract
When seeking relief for breach of contract, it is similarly required that the party seeking to enforce the contract shows it was ready, willing and able to close on the time is of the essence closing date (Zeitoune, 66 AD3d 889, 891 ["The same rule applies with respect to claims for damages for breach of contract for the sale of real property"]; see also 3801 Review Realty 111AD3d 509, 510 ["Plaintiff's inability to demonstrate that it was ready, willing and able to fulfill its contractual obligations at closing also precludes it from recovering money damages"]). As state supra, Plaintiff has not established that, as buyer, it was ready, willing, and able to close at the closing date, and thus, is precluded from seeking money damages. As such, the branch of Defendant's motion seeking dismissal of this cause of action is granted.
Cancellation of Notice of Pendency
A notice of pendency may be "filed in any action in a court of the state in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property" (CPLR 6501 [portions omitted]). Where the sole cause of action affecting real property is specific performance, and the cause of action is dismissed, the notice of pendency must also be cancelled (see Guberman v Rudder, 85 AD3d 683 [1st Dept 2011] ["the notice of pendency could not be maintained in the absence of a valid claim"]). The only cause of action affecting real property, specific performance, is dismissed, and thus, the notice of pendency must be cancelled. Accordingly, the branch of Defendant's motion seeking its cancellation is granted.
Liquidated Damages
It is well-settled that a "purchaser who, without breach on the part of the seller, defaults on a real estate contract without lawful excuse cannot recover her own down payment" (Rivera v Konkol, 48 AD3d 347 [1st Dept 2008]). Courts have enforced this proposition particularly where, as here, the down payment represents 10% or less of the contract price (Ashkenazi v Miller, 190 AD3d 668, 670 [2d Dept 2021]. Here, the parties' contract at paragraph 23(a) contemplates loss of the down payment by buyer where buyer defaults under the contract's terms, and the down payment of $35,000 constitutes 5% of the purchase price of $700,000. The Buyer presents no lawful excuse for its failure to perform its obligations under the contract at the closing date. Moreover, the Buyer did not address the Seller's requested relief for liquidated damages in its cross-motion and opposition. Accordingly, Defendant's request to retain the Plaintiff's down payment of $35,000 is granted.
Finally, to the extent that Defendant seeks, in the reply, leave to file a motion pursuant to CPLR 6514(c)[FN1]
for damages based on Plaintiff's alleged bad faith filing of the notice of pendency, the application is denied. Arguments are not appropriately raised for the first time on reply papers and as such the request is denied.
The remaining relief requested in Plaintiff's cross-motion for leave to serve its complaint and for a preliminary injunction are denied as moot.
The Court has considered the remaining contentions of the parties. To the extent that any contention is not addressed herein, it is rejected.
Accordingly, it is hereby
ORDERED that the part of the motion [Mot. Seq. 1] by Defendant ALTA BERRI that [*4]seeks an order, pursuant to CPLR 3211(a)(1) and (a)(7), dismissing the complaint against Plaintiff 1211 GILBERT AVENUE HOLDINGS LLC ("Plaintiff" or "Buyer") is granted; and it is further
ORDERED that the part of the motion [Mot. Seq.1] by Defendant that seeks an order awarding Defendant liquidated damages in the deposit amount of $35,000 with interest from September 28, 2023, together with costs and disbursements is granted to the extent that Defendant shall retain the Deposit and the interest accumulated thereon in the escrow account; and it is further
ORDERED that the part of the motion [Mot. Seq. 1] by Defendant that seeks an order, pursuant to CPLR 6514(b) and CPLR 6514(a), cancelling the Notice of Pendency dated October 24, 2023, is granted; and it is further
ORDERED that the request to move for leave to file a motion pursuant to CPLR 6514(c) for damages based on Plaintiff's alleged bad faith filing of the notice of pendency is denied; and it is further
ORDERED that the cross-motion by Plaintiff for leave to serve the summons and complaint and Notice of Pendency upon Defendant nunc pro tunc pursuant to CPLR 2004, or in the alternative, granting a preliminary injunction enjoining the sale or encumbrance of the subject property pursuant to CPLR 6301 is denied; and it is further
ORDERED that the Clerk of this Court is directed to enter judgment dismissing the complaint in its entirety; and it is further
ORDERED that the Notice of Pendency, dated October 24, 2023, shall be vacated and cancelled; and it is further
ORDERED that the Bronx County Clerk is directed to, upon service of a copy of this order with notice of entry, cancel and discharge of record the Notice of Pendency on the relevant real property located BLOCK 2762, LOT 64 on the LAND MAP OF THE COUNTY OF BRONX, bounded and described as 1211 GILBERT PLACE BRONX, NY as recorded in the Bronx County Clerk's office on October 24, 2023; and it is further
ORDERED that the Clerk shall mark motion sequence 1 decided and the action disposed in all court records.
This constitutes the Decision and Order of this Court.
Dated: February 6, 2025
HON. VERONICA G. HUMMEL, J.S.C.

Footnotes

Footnote 1:A defendant may file a motion to recover "any costs and expenses occasioned by the filing and cancellation [of the notice of pendency], in addition to any costs of the action" (551 W. Chelsea Partners LLC v 556 Holding LLC, 40 AD3d 546, 549 [1st Dept 2007] citing CPLR 6514[c]).